LEVINSON, Judge.
Defendant Jaime Jon Andrade was on probation in two separate Yadkin County matters. On or about 1 April 2003, defendant was convicted of felony breaking and/or entering and felony larceny. The trial court sentenced defendant to a suspended term of 8-10 months, and placed him on supervised probation for 36 months. On that same date, defendant pled no contest to felony possession of a Schedule II controlled substance (two counts), misdemeanor possession of drug paraphernalia, misdemeanor possession of up to 1/2 ounce of marijuana, and misdemeanor maintaining a vehicle/ dwelling place used for the keeping or selling of a controlled substance. All of the drug-related charges were consolidated intoone judgment and the trial court sentenced defendant to a suspended term of 6-8 months, and placed him on supervised probation for 36 months. At some time subsequent, defendant's probation was apparently transferred to Wilkes County.
On 22 July 2003, defendant's probation officer filed a probation violation report in both cases in Wilkes County Superior Court, alleging the following violations: (1) "defendant violated the conditions of electronic house arrest by cutting his transmitter band"; and (2) as of 22 July 2003, defendant was "$165.00 in arrears on his court payments having paid nothing". This matter was heard by Judge William Z. Wood, Jr. during the 4 August 2003 criminal session of Wilkes County Superior Court.
The State presented the testimony of defendant's probation officer Zachary Henderson. Henderson testified that defendant violated the terms and conditions as indicated on the 22 July 2003 probation violation report. As to the allegation that defendant had cut the electronic transmitter band from his leg, Henderson noted that in order for the device to show that the band had been tampered with, a great deal of force would have to be applied to the band. Henderson explained that when defendant was arrested and brought into his office he was not able to give a coherent answer to any of Henderson's questions. Henderson also noted that defendant "would frequently fall over as if he was about to fall out of his chair," whereupon Henderson would catch him and sit him back up in the chair. Henderson testified that defendant appeared to be under the influence of a controlled substance, but was unableto test defendant because that had not been made a condition of his probation.
At the hearing, defendant presented the testimony of both himself and his girlfriend. Defendant testified that on the night of 22 July 2003, prior to his arrest, that he and his girlfriend, Diane Bailey, had been asleep at his residence. Bailey testified she was suddenly awakened by her landlord, Bill, dragging her out of bed. After Bill dragged Bailey out of bed, he beat her up. Defendant remained asleep during the altercation. Defendant testified that he was sleeping deeply because he had not been sleeping well for the previous two days. Defendant explained that he had seen his ex-girlfriend's new boyfriend in the trailer park looking at his truck and had been staying awake just in case the man tried to damage his vehicle. Both defendant and Bailey testified that they did not become aware that the transmitter band was off of defendant's leg until his probation officer called his home on the next morning. Bailey testified that she subsequently found the transmitter band in defendant's bedroom, laying at the foot of the bed. Defendant admitted that the electronic monitoring personnel had been out at his residence four times previously because of trouble with his transmitter band. Defendant denied tampering with his transmitter band at any time.
Defendant admitted that he was in $240.00 arrears on his monetary obligation of probation. Defendant explained, however, that up until the week before his arrest he had been employed part-time and his living expenses and other monetary obligations made itimpossible to pay the monetary obligation of probation. Defendant testified that he was now working full-time and currently had the money to fully comply with the monetary conditions of his probation.
After hearing all of the evidence and arguments of counsel, the trial court found and concluded that defendant had willfully and without lawful excuse violated the terms and conditions of probation as alleged in the 22 July 2003 probation violation report. Consequently, the court revoked defendant's probation and activated his suspended sentence. Defendant appeals.
Defendant argues that the trial court erred in revoking his probation in that "there was no competent evidence" to show that he violated the terms and conditions of his probation. We disagree.
It is well settled that "`probation or suspension of sentence is an act of grace' and not a right." State v. Alston, 139 N.C. App. 787, 794, 534 S.E.2d 666, 670 (2000) (quoting State v. Baines, 40 N.C. App. 545, 550, 253 S.E.2d 300, 303 (1979)). To that end, a proceeding to revoke probation is not bound by the strict rules of evidence requiring proof of an alleged violation beyond a reasonable doubt. State v. Hill, 132 N.C. App. 209, 211, 510 S.E.2d 413, 414 (1999). Rather, the State need only present that amount of evidence "as to reasonably satisfy the judge in the exercise of his sound discretion that the defendant has willfully violated a valid condition of probation or that the defendant has violated without lawful excuse a valid condition upon which the sentence was suspended." State v. Hewett, 270 N.C. 348, 353, 154S.E.2d 476, 480 (1967). Once the State presents that quantum of evidence, "[t]he burden is on defendant to present competent evidence of his inability to comply with the conditions of probation; . . . otherwise, evidence of defendant's failure to comply may justify a finding that defendant's failure to comply was wilful or without lawful excuse." State v. Tozzi, 84 N.C. App. 517, 521, 353 S.E.2d 250, 253 (1987). The Court noted in Tozzi, "Any violation of a valid condition of probation is sufficient to revoke [a] defendant's probation." Id.
We note at the outset that defendant admitted to being in arrears on his monetary obligation of probation. He, however, submitted that until recently, he was unable to make payment on that obligation because he was only employed part-time and had other expenses and obligations that needed to be paid. Notably, however, the record evidence tends to show that defendant had made no payment on his "court payments," but by his own testimony, there was a period of time during which defendant was living with his mother and did not have these other extraneous expenses, and could have made his court payments. Further, the State's evidence as to defendant's removal of his transmitter band was such as to "reasonably satisfy the [court] in the exercise of his sound discretion that the defendant ha[d] willfully violated" the term and condition of probation requiring that defendant comply with all of the rules and regulation of the Electronic House Arrest Program. See Hewett, 270 N.C. at 353, 154 S.E.2d at 480. Contrary to defendant's argument, the record shows that the court fullyconsidered defendant's evidence but rejected that evidence as not credible. See State v. Williamson, 61 N.C. App. 531, 533, 301 S.E.2d 423, 425 (1983) (providing that the trial court, sitting as finder of fact in a probation revocation hearing, is not required to accept a defendant's evidence as true).
Having determined that there was sufficient evidence to support the trial court's finding that defendant willfully violated the terms and conditions of his probation as alleged in the 22 July 2003 violation report, we hold that the trial court did not abuse its discretion in revoking defendant's probation and activating his suspended sentences. The judgments of the trial court are therefore affirmed.
Affirmed.
Judges TIMMONS-GOODSON and CALABRIA concur.
Report per Rule 30(e).